IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| JOSHUA MOREHOUSE,<br>Individually and on behalf of all others<br>similarly situated<br><br>*Plaintiff*,<br><br>v.<br><br>McCLINTON ENERGY GROUP, L.L.C.<br>and MOTOR MILLS SNUBBING, L.L.C.<br><br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 7:15-cv-00057<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION<br>PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Joshua Morehouse ("Morehouse" or "Plaintiff") brings this collective action lawsuit against Defendants McClinton Energy Group, L.L.C. ("MEG") and Motor Mills Snubbing, L.L.C. ("MMS"), to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA"). Plaintiff Morehouse worked for Defendants MEG and MMS as a Pump Operator, received a salary and a day rate/job bonus but did not receive overtime. As shown below, Defendants MEG and MMS failed to compensate Plaintiff Morehouse and all other similarly situated employees ("Potential Class Members") in accordance with the FLSA because they were not paid overtime for all hours worked in excess of forty (40) in a single workweek. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### I.
### OVERVIEW

1.1   This is a collective action to recover overtime wages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq*.

1.2 Plaintiff and the Potential Class Members are those persons who worked for Defendants MEG and MMS within the last three years and were paid a fixed salary plus a non-discretionary job bonus (day rate), but did not receive overtime for all hours worked over forty (40) in each workweek.

1.3 The FLSA requires that all forms of compensation—including the non-discretionary job bonuses/day rates paid to Plaintiff and the Potential Class Members—be included in the calculation of the regular rate of pay for overtime purposes.

1.4 Plaintiff and the Potential Class Members routinely work (and worked) in excess of 40 hours per workweek.

1.5 Plaintiff and the Potential Class Members were not paid overtime for all hours worked in excess of forty (40) hours per workweek.

1.6 The decision by Defendants MEG and MMS not to pay overtime compensation to Plaintiff and the Potential Class Members was neither reasonable nor in good faith.

1.7 Defendants MEG and MMS knowingly and deliberately failed to compensate Plaintiff and the Potential Class Members overtime for all hours worked in excess of forty (40) hours per workweek.

1.8 Plaintiff and the Potential Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.[1] Specifically, Plaintiff and the Potential Class Members performed technical and manual labor type job duties in the oilfield.

---

[1] All exemptions are to be narrowly construed and the burden of proof to establish them lies with the employer. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).

1.9   Plaintiff and the Potential Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

1.10   Plaintiff also prays that all similarly situated workers (Potential Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

2.1   Plaintiff Joshua Morehouse ("Morehouse") worked for MEG and its subsidiary MMS ("Defendants") within the meaning of the FLSA in this judicial district within the relevant three-year period. Plaintiff Morehouse's consent to be a party plaintiff is attached as Exhibit "A".

2.2   The Potential Class Members are those current and former employees who work (or have worked) for Defendants MEG and MMS in the past three years and have been subjected to the same illegal pay system under which Plaintiff Morehouse worked and was paid.

2.3   McClinton Energy Group, L.L.C. ("MEG") is a Texas limited liability company doing business in the State of Texas. Defendant MEG may be served through its registered agent for service, Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

2.4   Motor Mills Snubbing, L.L.C. ("MMS") is a Texas limited liability company doing business in the State of Texas. Defendant MMS may be served through its registered agent for service, Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

## III.
## JURISDICTION & VENUE

3.1     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. § 201 *et. seq*.

3.2     This Court has personal jurisdiction over Defendants MEG and MMS because the cause of action arose within this district as a result of Defendants' conduct within this District.

3.3     Venue is proper in the Western District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

3.4     Specifically, Defendants MEG and MMS maintain their principal places of business in this District and Division and Plaintiff Morehouse resided in this District and Division throughout his employment with Defendants MEG and MMS.

3.5     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## FLSA COVERAGE

4.1     At all times hereinafter mentioned, Defendants MEG and MMS each have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

4.2     At all times hereinafter mentioned, Defendants MEG and MMS each have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

4.3     At all times hereinafter mentioned, Defendants MEG and MMS each have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises have had employees engaged in commerce or in the production of goods

for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

4.4     During the respective periods of Plaintiff and the Potential Class Members' employment by Defendants MEG and MMS, these individuals provided services for Defendants MEG and MMS that involved interstate commerce.

4.5     In performing the operations hereinabove described, Plaintiff and the Potential Class Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

4.6     Specifically, Plaintiff and the Potential Class Members are (or were) non-exempt employees who worked for Defendants MEG and MMS and were engaged in oilfield services that were directly essential to the production of goods for Defendants MEG and MMS and related oil and gas exploration and production companies. 29 U.S.C. § 203(j).

4.7     At all times hereinafter mentioned, Plaintiff and the Potential Class Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

4.8     The proposed class of similarly situated employees, i.e. potential class members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as "all

Operators and Hands who worked for McClinton Energy Group, L.L.C. and Motor Mills Snubbing, L.L.C., from April 23, 2012 to the present, who were paid a salary plus a job bonus/day rate but did not receive overtime."

4.9   The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants MEG and MMS

# V.
# FACTS

5.1   Defendants MEG and MMS provide equipment and services to the oil and gas industry on a nationwide basis.[2] Defendants MEG and MMS maintain places of business in Texas, Oklahoma, Ohio, Pennsylvania, New York and Colorado.[3]

5.2   To offer its services, Defendants MEG and MMS employ numerous Operators and Hands across the United States—all of these individuals make up the putative or potential class. While exact job titles may differ, these employees are subjected to the same or similar illegal pay practices for similar work in the oilfield.

5.3   Defendants MEG and MMS's employees—including Plaintiff and the Potential Class Members—worked (and continue to work) side-by-side on job sites throughout the Western District of Texas and the United States.

5.4   Plaintiff Morehouse worked for Defendants MEG and MMS as a Pump Operator and was paid a fixed salary plus a non-discretionary job bonus/day rate for time worked at a well site/drilling location.

---

[2] *See* http://www.mcclintonenergy.com/home.
[3] *See* http://www.mcclintonenergy.com/contact.

5.5     Upon information and belief, Plaintiff and the Potential Class Members' primary job duties included rigging up and rigging down oilfield equipment, operating oilfield machinery, and reporting daily activities to his supervisors.

5.6     In the same vein, Plaintiff and the Potential Class Members would conduct their day-to-day activities within designed parameters and in accordance with pre-determined well, workover, completion and operational plans.

5.7     Plaintiff and the Potential Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by MEG and MMS and/or its clients. Virtually every job function was pre-determined by MEG and MMS, including the tools to use at a job site, the schedule of work, and related work duties. Plaintiff and the Potential Class Members were prohibited from varying their job duties outside of the predetermined parameters. Moreover, Plaintiff and the Potential Class Members' job functions were primarily technical and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

5.8     Plaintiff and the Potential Class Members are blue-collar workers. They rely on their hands, physical skills, and energy to perform manual labor in the oilfield.

5.9     Plaintiff and the Potential Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

5.10    Plaintiff and the Potential Class Members did not (and currently do not) have the authority to hire or fire other employees, and they were not (and currently are not) responsible for making hiring or firing recommendations.

5.11 Moreover, Plaintiff and the Potential Class Members did not (and currently do not) supervise two or more employees.

5.12 Plaintiff and the Potential Class Members worked (and continue to work) long hours. Specifically, these individuals regularly worked (and continue to work) more than 12 hours in a day, and more than 80 hours in a week.

5.13 Upon information and belief, the non-discretionary bonuses/day rates paid to Plaintiff and the Potential Class Members were meant to encourage and motivate Plaintiff and the Potential Class Members to work harder and to reward them for their hard work.

5.14 Upon information and belief, the non-discretionary bonuses/day rates were based upon a pre-determined formula established by Defendants MEG and MMS. Moreover, specific criteria had to be met in order to receive the job bonuses.

5.15 When Plaintiff and the Potential Class Members met the criteria, they were entitled to receive the job bonuses/day rates.

5.16 Upon information and belief, Plaintiff and the Potential Class Members received these non-discretionary bonuses/day rates on a regular and frequent basis.

5.17 The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

5.18 Under the FLSA, the regular rate of pay is the economic reality of the arrangement between the employer and the employee. 29 C.F.R. § 778.108.

5.19 Pursuant to 29 C.F.R. § 778.209, these non-discretionary job bonuses/day rates (and any other non-discretionary compensation) should have been included in

Plaintiff and the Potential Class Members' regular rates of pay before any and all overtime multipliers were applied.

5.20   Not only did MEG and MMS fail to include these non-discretionary job bonuses/day rates in their employees' regular rates of pay before applying any and all overtime multipliers, Gladiator did not pay any overtime at all for work in excess of forty (40) hours per week.

5.21   MEG and MMS denied Plaintiff and the Potential Class Members overtime pay as a result of a widely applicable, illegal pay practice. Plaintiff Morehouse regularly worked in excess of 40 hours per week but never received overtime compensation. Instead of paying overtime, MEG and MMS applied this pay practice despite clear and controlling law that states that the manual labor/technical duties which were performed by Plaintiff and the Potential Class Members consist of non-exempt work.

5.22   Accordingly, MEG and MMS's pay policies and practices blatantly violated (and continue to violate) the FLSA.

## VI.
## CAUSES OF ACTION

**A.   FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT**

6.1   Defendants MEG and MMS violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

6.2     Moreover, Defendants MEG and MMS knowingly, willfully and in reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

6.3     Defendants MEG and MMS knew or should have known their pay practices were in violation of the FLSA.

6.4     Defendants MEG and MMS are sophisticated parties and employer(s), and therefore knew (or should have known) their policies were in violation of the FLSA.

6.5     Plaintiff and the Potential Class Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants MEG and MMS to pay according to the law.

6.6     The decision and practice by Defendants MEG and MMS to not pay overtime was neither reasonable nor in good faith.

6.7     Accordingly, Plaintiff and the Potential Class Members are entitled to overtime wages for all hours worked pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

**B.     COLLECTIVE ACTION ALLEGATIONS**

6.8     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all those who are (or were) similarly situated to Plaintiff.

6.9     Other similarly situated employees have been victimized by Defendants MEG and MMS's patterns, practices, and policies, which are in willful violation of the FLSA.

6.10    The Potential Class Members are "all Operators and Hands who worked for McClinton Energy Group, L.L.C. and Motor Mills Snubbing, L.L.C., from April 23, 2012 to the present, who were paid a salary plus a job bonus/day rate but did not receive overtime."

6.11    Defendants MEG and MMS's failure to pay wages for all hours worked and overtime compensation at the rates required by the FLSA results from generally applicable policies and practices, and does not depend on the personal circumstances of the Potential Class Members.

6.12    Thus, Plaintiff's experiences are typical of the experiences of the Potential Class Members.

6.13    The specific job titles or precise job requirements of the various Potential Class Members does not prevent collective treatment.

6.14    All of the Potential Class Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

6.15    Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the Potential Class Members are blue-collar oilfield workers entitled to overtime after 40 hours in a week.

6.16    Defendants MEG and MMS employed a substantial number of workers in the United States during the past three years. These workers are geographically dispersed, residing and working in states across the country. Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

6.17	Absent a collective action, many members of the proposed FLSA class likely will not obtain redress of their injuries and Defendants MEG and MMS will retain the proceeds of its rampant violations.

6.18	Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

6.19	Accordingly, the class of similarly situated plaintiffs should be defined as:

**ALL OPERATORS AND HANDS WHO WORKED FOR MCCLINTON ENERGY GROUP, L.L.C. AND MOTOR MILLS SNUBBING, L.L.C. FROM APRIL 23, 2012 THROUGH THE PRESENT, WHO WERE PAID A SALARY PLUS A JOB BONUS/DAY RATE BUT DID NOT RECEIVE OVERTIME.**

## VII.
## RELIEF SOUGHT

7.1	Plaintiff respectfully prays for judgment against Defendants MEG and MMS as follows:

a.	For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA and requiring Defendants MEG and MMS to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b.	For an Order approving the form and content of a notice to be sent to all potential collective action members advising them of the pendency of this litigation and of their rights with respect thereto;

c.	For an Order awarding Plaintiff (and those who have joined in the suit) back wages that have been improperly withheld;

  d. For an Order pursuant to Section 16(b) of the FLSA finding Defendants MEG and MMS liable for unpaid back wages due to Plaintiff (and those who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who have joined in the suit);

  e. For an Order awarding Plaintiff (and those who have joined in the suit) the costs of this action;

  f. For an Order awarding Plaintiff (and those who have joined in the suit) attorneys' fees;

  g. For an Order awarding Plaintiff (and those who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

  h. For an Order compelling the accounting of the books and records of Defendants MEG and MMS; and

  i. For an Order granting such other and further relief as may be necessary and appropriate.

                    Respectfully submitted,

By:   /s/ *Clif Alexander*
       Clif Alexander
       Federal I.D. No. 1138436
       Texas Bar No. 24064805
       calexander@swhhb.com
       Craig M. Sico
       Federal I.D. No. 13540
       Texas Bar No. 18339850
       csico@swhhb.com
       SICO, WHITE, HOELSCHER, HARRIS & BRAUGH LLP
       802 N. Carancahua, Suite 900
       Corpus Christi, Texas 78401
       Telephone: 361/653-3300
       Facsimile: 361/653-3333

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND POTENTIAL CLASS MEMBERS**